# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF IOWA
# CENTRAL DIVISION

MAX MICHAEL VANDERGRAAF,

      Plaintiff,

vs.

ANDREW M. SAUL,
Commissioner of Social Security,

      Defendant.

No. 20-CV-3002-CJW-MAR

**ORDER ON REPORT AND RECOMMENDATION**

_____

## I. INTRODUCTION

This matter is before the Court on a Report & Recommendation ("R&R") by the Honorable Mark A. Roberts, United States Magistrate Judge. (Doc. 16). Judge Roberts recommends that the Court affirm the decision of the Commissioner of Social Security ("the Commissioner") denying plaintiff Max Michael Vandergraaf's ("claimant") application for supplemental security income ("SSI") benefits under Title XVI of the Social Security Act. (*Id.*, at 1). On March 9, 2021, claimant filed objections to the R&R. (Doc. 17).

For the following reasons, the Court **overrules** claimant's objections (Doc. 17), **adopts** Judge Roberts' R&R with modification (Doc. 16), and **affirms** the Commissioner's decision.

## II. RELEVANT BACKGROUND

On May 23, 2016, claimant applied for SSI alleging disability since January 1, 2016, due to depression, hepatitis B, migraine headaches, drug and alcohol abuse, and

seizures. (AR 10, 209, 258).[1] The Commissioner denied claimant's application on its initial review and on reconsideration. (AR 112–20, 135–40). On July 30, 2018, Administrative Law Judge ("ALJ") Robert Kelly held a hearing on claimant's case at which claimant and a vocational expert testified. (AR 31–68). On December 4, 2018, the ALJ found claimant was not disabled. (AR 10–22). On November 22, 2019, the Appeals Council denied further review. (AR 1–5).

On January 16, 2020, claimant timely filed a complaint in this Court. (Doc. 3). By July 27, 2020, the parties had fully briefed the case, and the Court deemed the case ready for decision. (Docs. 11, 12, 13, 14, & 15). On that same day, the Court referred this case to Judge Roberts for an R&R.

### III. THE REPORT AND RECOMMENDATION

On March 2, 2021, Judge Roberts issued an R&R recommending that the Court affirm the Commissioner's decision. (Doc. 16). In his R&R, Judge Roberts noted that although claimant made two broad claims of error—the ALJ erred in finding claimant could perform substantial gainful activity and in weighing claimant's treating psychologist's opinion—claimant's brief actually raised seven issues. (*Id.*, at 7). Judge Roberts addressed those issues separately.

#### A. *Weight the ALJ Afforded Medical Opinions*

First, Judge Roberts reviewed the weight the ALJ afforded the various psychologists' opinions. (*Id.*, at 9–42). As for giving little weight to the opinion of Dr. Carroll Roland, an examining psychologist, claimant argued that the ALJ erred in focusing on Dr. Roland's lack of expertise in seizures, asserting that the seizures were directly related to claimant's stress and anxiety. (Doc. 12, at 22). Claimant also argued that the ALJ erred in discounting Dr. Roland's opinion by giving too much weight to

---

[1] "AR" refers to the administrative record. (Doc. 9).

2

Case 3:20-cv-03002-CJW-MAR    Document 18    Filed 03/25/21    Page 2 of 17

claimant's ability to socialize in church and other nonwork-related settings. (*Id.*). Judge Roberts concluded "that Dr. Roland did not tie Claimant's seizures to his mental health issues" and that Dr. Roland based his opinion "based solely on information Claimant reported to him." (Doc. 16, at 14–15). Although Judge Roberts acknowledged that some treatment records could be supportive of claimant's position, others were not and reflected doubts about claimant's credibility. (*Id.*, at 16–20). Judge Roberts considered whether the record contained other treatment notes consistent with the ALJ's findings and found there were, particularly with regard to Dr. Seeta Patel whose records noted claimant's solo international travel and other social activities inconsistent with disabling mental illness. (*Id.*, at 20–21). Judge Roberts ultimately found there was substantial evidence in the record to support the ALJ's decision to discount the weight afforded to Dr. Roland's opinion. (*Id.*, at 22).

Judge Roberts also addressed claimant's argument that the ALJ erred in affording great weight to the agency consulting psychologists who found claimant had no exertional limitations and experienced no more than mild or moderate limitations in mental functioning. (*Id.*, at 22–24). Claimant argued that these opinions were not entitled to much weight because the psychologists did not treat or examine claimant, did not have access to all information, and rendered opinions different from claimant's treating psychologist. (Doc. 12, at 23–24). Judge Roberts reviewed the legal standard for weighing consulting examiners' opinions and found claimant's arguments without merit because the ALJ considered all the records and information in assessing the weight he gave to the consulting examiners' opinions. (Doc. 16, at 23–24).

Judge Roberts devoted considerable analysis to the weight the ALJ afforded to claimant's treating psychologist, Dr. Rachelle Lisogurski. (*Id.*, at 9, 24–42). Dr. Lisogurski provided virtual therapy to claimant for a seven-month period through Dr. on Demand. (*Id.*, at 24). On March 5, 2018, Dr. Lisogurski completed a check-box opinion

3

form in which she diagnosed claimant as having bipolar disorder, post-traumatic stress disorder ("PTSD"), panic disorder without agoraphobia, and attention deficit hyperactivity disorder. (AR 851, 856). Dr. Lisogurski checked the box for only one symptom—recurrent and intrusive recollections of a traumatic experience which are a source of marked distress—but then checked 15 of 25 work-related activities in which Dr. Lisogurski opined that claimant would be unable to perform at competitive standards. (AR 852–54). Dr. Lisogurski checked four more of the 25 boxes indicating that claimant would be seriously limited as to such activities. (AR 854). She ultimately opined that claimant would "not be able to perform any employment in the foreseeable future." (AR 1908–09). The ALJ gave little to no weight to these opinions because Dr. Lisogurski never saw claimant in person, her notes were inconsistent with other medical records and claimant's daily activities, and her opinion invaded the Commissioner's domain to the extent she opined about claimant's employability. (AR 20).

Judge Roberts agreed with claimant that the fact Dr. Lisogurski did not see claimant in person "was not a legitimate reason" to discount her opinion. (Doc. 16, at 28). Nevertheless, Judge Roberts found that error did not require remand because other evidence supported the ALJ's decision. (*Id.*). Judge Roberts agreed with the Commissioner that the ALJ was correct in rejecting Dr. Lisogurski's opinion about claimant's ability to work as that is a decision reserved to the Commissioner. (*Id.*, at 28–29). Further, Judge Roberts found that most of the time claimant's depression and anxiety were situational in nature which cannot form the basis of a disability claim. (*Id.*, at 30–31). Other notes by Dr. Lisogurski were conclusory in nature and reflected claimant's self-reporting only. (*Id.*, at 31–32). Judge Roberts agreed with the Commissioner that other than having some pressured speech and flight of ideas, Dr. Lisogurski's notes reflected that claimant's mental status was largely normal and appropriate. (*Id.*, at 32–33). Judge Roberts also agreed with the Commissioner that Dr.

4

Lisogurski's treatment notes were inconsistent with her opinions about his ability to work and claimant's functional limitations. (*Id.*, at 34). Judge Roberts thought that the ALJ's characterization of Dr. Lisogurski's treatment records as "sparse" was arguable but was harmless if it was erroneous. (*Id.*, at 35–36). Judge Roberts found claimant's reliance on other opinions to shore up Dr. Lisogurski's opinion was misplaced because those opinions had their own problems. (*Id.*, at 36–37). Likewise, Judge Roberts found that claimant's reliance on treatment records from other providers failed to sufficiently support Dr. Lisogurski's opinions. (*Id.*, at 37–41). Last, Judge Roberts disagreed with claimant's argument that the ALJ failed to identify the records that were inconsistent with Dr. Lisogurski's opinion; Judge Roberts found the ALJ cited those records in his decision even if he did not do so in the same paragraph in which he assigned little weight to Dr. Lisogurski's opinion. (*Id.*, at 40–41).

After this exhausting and thorough analysis, Judge Roberts recommended that the Court affirm the Commissioner's decision on this issue. (*Id.*, at 42).

### B. *Claimant's Back Impairment*

After addressing the opinions issue, Judge Roberts turned to claimant's assertion that the ALJ erred in evaluating his back impairment. (*Id.*, at 42–47). The ALJ noted claimant had a lumbar disc protrusion but found it was a nonsevere impairment. (AR 16). Judge Roberts reviewed the ALJ's findings regarding claimant's back pain, noting at length the medical records upon which the ALJ relied. (*Id.*, at 42–43). Judge Roberts then reviewed in great detail the medical records upon which claimant relied. (*Id.*, at 43–45). Judge Roberts found the ALJ's decision was supported by substantial evidence in the record. (*Id.*, at 45–46). Judge Roberts reasoned that claimant's complaints of back pain do not make the impairment severe when the records show only recommendations of conservative treatment, no medical provider imposed physical

5

limitations, and nothing supporting claimant's assertion that he can only lift 15 pounds. (*Id.*, at 45–47).

Thus, Judge Roberts recommended that the Court affirm the Commissioner's decision on this issue. (*Id.*, at 47).

### C. *Migraine Headaches*

Judge Roberts next addressed claimant's assertion that his migraine headaches were disabling. (*Id.*, at 47–50). The ALJ found that claimant's migraine headaches imposed no more than minimal functional limitations. (AR 17). Judge Roberts reviewed the basis for the ALJ's decision on this issue, which included findings that the medical records did not support claimant's assertion that he had daily headaches that required medication and rest, did not have headaches with the frequency claimed, and that claimant often did not even try over-the-counter pain relievers but when he did so they largely provided relief. (Doc. 16, at 47). Judge Roberts found claimant's citations to the record did not support his argument that his migraine headaches were debilitating. (*Id.*, at 47–49). Judge Roberts also concluded that during the time claimant asserted he had debilitating headaches he worked, completed college classes, traveled, attending church and meetings, shopped, and cared for himself without limitations due to his headaches. (*Id.*, at 49–50).

Thus, Judge Roberts recommended that the Court affirm the Commissioner's decision on this issue. (*Id.*, at 50).

### D. *Claimant's Subjective Complaints*

Judge Roberts also addressed claimant's assertion that the ALJ failed to properly consider claimant's subjective complaints of feeling depressed, anxious, and stressed. (*Id.*, at 50–56). Judge Roberts reviewed claimant's record citations as to his alleged functional limitations and found that with limited exceptions they did not support claimant's position. (*Id.*, at 51–52). Judge Roberts also found that claimant's daily

activities were inconsistent with a finding of the debilitating symptoms claimant reported. (*Id.*, at 52–53). Likewise, after reviewing the record, Judge Roberts found that it did not support claimant's description of the intensity of his symptoms. (*Id.*, at 53–55). Last, Judge Roberts found that none of the medical opinions supported claimant's description of the severity and intensity of his symptoms. (*Id.*, at 55–56).

Thus, Judge Roberts recommended that the Court affirm the Commissioner's decision on this issue. (*Id.*, at 56).

### E. *Substantial Evidence Finding*

The last issue Judge Roberts addressed was claimant's broad assertion that substantial evidence did not support the ALJ's findings. (*Id.*, at 56–57). Claimant argued that the ALJ failed to consider the longitudinal basis of claimant's impairments arising from his mental health impairments. (Doc. 12, at 7). Claimant argued that the ALJ ignored evidence that showed claimant would miss excessive work due to panic attacks, migraine headaches, PTSD, and his other mental impairments. (*Id.*, at 11). Judge Roberts found that the ALJ discussed claimant's symptoms in his decision and either refuted them when he found them unsupported or adjusted claimant's residual functional capacity assessment when he found them supported by the record. (Doc. 16, at 57). Relying on his findings on all the prior issues, Judge Roberts concluded that substantial evidence in the record did support the ALJ's decision. (*Id.*).

Thus, Judge Roberts recommended that the Court affirm the Commissioner's decision on this issue. (*Id.*).

### IV. *CLAIMANT'S OBJECTIONS TO THE R&R*

Claimant objects to Judge Roberts' R&R in four respects. (Doc. 17). First, claimant argues that Judge Roberts erred by failing to remand the case after finding the ALJ improperly discounted Dr. Lisogurski's opinion on the ground that she provided only virtual treatment. (Doc. 17, at 1–6). Claimant argues that Judge Roberts erred in

7

concluding that the ALJ would have reached the same decision regardless of that error and that Judge Roberts' analysis constitutes improper weighing of the evidence. (*Id.*). Second, claimant objects to Judge Roberts' decision finding that the ALJ did not err in assessing claimant's back impairment. (*Id.*, at 6–8). Third, claimant asserts that Judge Roberts erred in finding the ALJ properly assessed the weight to be given to Dr. Roland's opinion. (*Id.*, at 8–10). Last, claimant objects to Judge Roberts' conclusion that substantial evidence supported the ALJ's decision. (*Id.*, at 10–11). As to the last objection, claimant asserted only a general objection to Judge Roberts' recommendations on the individual issues of claimant's back pain, migraine headaches, and subjective complaints. (*Id.*).

## V. *APPLICABLE STANDARDS*

### A. *Judicial Review of the Commissioner's Decision*

The Court must affirm the Commissioner's decision "if it is supported by substantial evidence on the record as a whole." *Pelkey v. Barnhart*, 433 F.3d 575, 577 (8th Cir. 2006); *see also* 42 U.S.C. § 405(g). "Substantial evidence is less than a preponderance, but enough that a reasonable mind might accept as adequate to support a conclusion." *Lewis v. Barnhart*, 353 F.3d 642, 645 (8th Cir. 2003). The Eighth Circuit explains the standard as "less than the weight of the evidence and [that] allows for the possibility of drawing two inconsistent conclusions," thus embodying "a zone of choice within which the [Commissioner] may decide to grant or deny benefits without being subject to reversal on appeal." *Culbertson v. Shalala*, 30 F.3d 934, 939 (8th Cir. 1994).

Under this standard, the court considers "all of the evidence that was before the [ALJ], but [it does] not re-weigh the evidence[.]" *Vester v. Barnhart*, 416 F.3d 886, 889 (8th Cir. 2005). The court considers both evidence which supports the Commissioner's decision and evidence that detracts from it. *Kluesner v. Astrue*, 607 F.3d 533, 536 (8th Cir. 2010). The court "must search the record for evidence contradicting the

8

[Commissioner's] decision and give that evidence appropriate weight when determining whether the overall evidence in support is substantial." *Baldwin v. Barnhart*, 349 F.3d 549, 555 (8th Cir. 2003) (citation omitted).

To evaluate the evidence in an appeal of a denial of benefits, a court must apply a balancing test to assess any contradictory evidence. *Sobania v. Sec'y of Health & Human Servs.*, 879 F.2d 441, 444 (8th Cir. 1989). A court, however, does not "reweigh the evidence presented to the ALJ," *Baldwin*, 349 F.3d at 555 (citation omitted), or "review the factual record de novo." *Roe v. Chater*, 92 F.3d 672, 675 (8th Cir. 1996) (citation omitted). Instead, if, after reviewing the evidence, the court "find[s] it possible to draw two inconsistent positions from the evidence and one of those positions represents the Commissioner's findings, [the court] must affirm the [Commissioner's] denial of benefits." *Kluesner*, 607 F.3d at 536 (citation omitted). This is true even if the court "might have weighed the evidence differently[.]" *Culbertson*, 30 F.3d at 939. The court may not reverse the Commissioner's decision "merely because substantial evidence would have supported an opposite decision." *Baker v. Heckler*, 730 F.2d 1147, 1150 (8th Cir. 1984); *see also Goff v. Barnhart*, 421 F.3d 785, 789 (8th Cir. 2005).

### B. Review of Report and Recommendation

A district judge must review a magistrate judge's R&R under the following standards:

> Within fourteen days after being served with a copy, any party may serve and file written objections to such proposed findings and recommendations as provided by rules of court. A judge of the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made. A judge of the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge may also receive further evidence or recommit the matter to the magistrate judge with instructions.

9

28 U.S.C. § 636(b)(1); *see also* FED. R. CIV. P. 72(b). Thus, when a party objects to any portion of an R&R, the district judge must undertake a de novo review of that portion.

A court reviews any portions of an R&R to which a party has made no objections under at least a clearly erroneous standard. *See, e.g.*, *Grinder v. Gammon*, 73 F.3d 793, 795 (8th Cir. 1996) (noting that when no objections are filed "[the district court judge] would only have to review the findings of the magistrate judge for clear error."). As the Supreme Court has explained, "[a] finding is 'clearly erroneous' when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *Anderson v. City of Bessemer City*, 470 U.S. 564, 573 (1985) (quoting *United States v. U.S. Gypsum Co.*, 333 U.S. 364, 395 (1948)). A district judge may, however, elect to review an R&R under a more-exacting standard even if no objections are filed:

> Any party that desires plenary consideration by the Article III judge of any issue need only ask. Moreover, while the statute does not require the judge to review an issue *de novo* if no objections are filed, it does not preclude further review by the district judge, *sua sponte* or at the request of a party, under a *de novo* or any other standard.

*Thomas v. Arn*, 474 U.S. 140, 154 (1985).

## VI. ANALYSIS

The Court will address claimant's four objections in the order he raised them.

### A. Dr. Lisogurski's Opinion

Claimant argues that Judge Roberts erred in not remanding the case once Judge Roberts concluded that the ALJ erred in discounting Dr. Lisogurski's opinion on the ground that she provided only virtual treatment to claimant. (Doc. 17, at 1–6). Claimant argues that Judge Roberts improperly conducted a de novo review and weighing of the record in reaching the conclusion that the error did not mandate remand. (*Id.*). The Court finds Judge Roberts did not err.

10

The premise of claimant's objection is that Judge Roberts was correct in finding the ALJ erred in discounting the weight afforded Dr. Lisogurski's opinion on the ground that she provided only virtual treatment. Indeed, claimant argues that this was legal error by the ALJ. (*Id.*, at 1). Remarkably, however, claimant provided no authority in his brief or in his objections for that proposition. Claimant did not cite a single case where a court held that an ALJ may not discount the weight afforded a treatment provider's opinion when that treatment provider has never met the patient in person. Judge Roberts cited two cases, *Wyllie v. Berryhill*, No. 3:17-CV-05157-TLF, 2017 WL 4349819 (W.D. Wash. Oct. 2, 2017) and *Herbert v. Colvin*, No. ED CV 15-1223 MRW, 2016 WL 8732428 (C.D. Cal. Apr. 22, 2016), but not for the proposition that discounting weight under these circumstances was legal error. Rather, Judge Roberts cited these cases simply to note the ALJs did not discount weight afforded medical opinions on the ground that treatment was virtual. (Doc. 16, at 28).

The Court rejects claimant's underlying premise, finding the ALJ did not err in discounting Dr. Lisogurski's opinion in part on the ground that she never treated claimant in person. Claimant cites no legal authority that this constitutes error and the Court's own exhaustive research on the issue resulted in no such authority. Indeed, the cases Judge Roberts cited not only do not support that conclusion (he never claimed they did), they are also factually distinguishable. In *Wyllie*, a doctor treated the claimant for many years, meeting with claimant in person once a year and supplementing that treatment with "'telemental health therapy' through telephone and video chat sessions . . . about once a month." 2017 WL 4349819, at *3. Similarly, although the claimant in *Herbert* received some "online counseling," the court also noted that his "mental health practitioners had considerable personal interaction" with claimant. 2016 WL 8732428, at *2, *4. Here, Dr. Lisogurski counseled claimant for only seven months and did not once see him in person.

Indeed, the extant authority suggests that ALJs and courts may very well give less weight to a providers' medical opinion when the provider has never seen the claimant. *See, e.g.*, *Lenning v. Berryhill*, 1:18-CV-01020-VLD, 2019 WL 3290995, at *17 (D.S.D. July 22, 2019) (criticizing the ALJ for affording great weight to psychologists who never saw the claimant); *Swart v. Berryhill*, No. 16-CV-05383-LHK, 2017 WL 4809673, at *9 (N.D. Cal. Oct. 24, 2017) (the ALJ discounted the doctor's opinion because the ALJ found the doctor only treated claimant over the phone, the court reversed not because this is an improper reason to discount but because the record indicated that treatment was not exclusively over the phone but also in person); *Cole v. Colvin*, No. 1:13cv868, 2014 WL 4060145, at *6 (M.D.N.C. Aug. 14, 2014) (stating that the "ALJ was justified in giving more weight to reports from doctors who had actually seen and physically examined Cole over reports from doctors who simply interviewed him over the phone."): *McCormick v. Colvin*, No. C12–4061–MWB, 2013 WL 3972700, at *18 (N.D. Iowa July 26, 2013) (noting that an ALJ may err if the ALJ gave great weight to a consultative psychologist who never saw the claimant); *Carney v. Astrue*, No. 4:09CV3043, 2010 WL 411230, at *11 (D. Neb. Jan. 28, 2010) (finding the ALJ could discount the weight afforded the opinion of psychologist who "never saw or treated" the claimant). The academic literature also recognizes limitations of telepsychiatry. *See* Kirsten E. Cowan, MD, et al, *Barriers to Use of Telepsychiatry: Clinicians as Gatekeepers*, 94 MAYO CLINIC PROCEEDINGS 12 (Dec. 1, 2019) (noting concerns about establishing rapport with patients, among other things);[2] *see also* Vidit N. Munshi & Ipsit V. Vahia, *Psychiatry is Revealing the Potential—and Pitfalls—of Telehealth*, HARVARD

---

[2] Available at:
https://www.ehidc.org/sites/default/files/resources/files/barriers%20to%20use%20of%20telepsychiartry%20clinicians%20as%20gatekeepers.pdfA

BUSINESS REVIEW (Dec. 7, 2020).[3] It appears to the Court to be an obvious matter that effective treatment of psychological problems is built on a trusting relationship that the treatment provider has with a patient, a relationship that is at best impaired by exclusively online contact, if it can be formed at all. The impersonal nature of the medium itself stands as an apparent obstacle to psychological treatment which is not otherwise presented by in-person counseling.

Thus, the Court disagrees with claimant that the ALJ erred in discounting the weight afforded the opinion of a psychologist who never once personally met claimant. Absent legal authority stating that an ALJ may not discount the weight afforded the opinions of such virtual providers, the Court modifies that portion of Judge Roberts' R&R where he found the ALJ committed error on this ground. On the other hand, the Court agrees with Judge Roberts' analysis and finding that the medical records contained substantial evidence to support the ALJ giving less weight to Dr. Lisogurski's opinion for the other reasons stated. Claimant's argument that Judge Roberts substituted his own de novo weighing of the record misses the mark. Judge Roberts did indeed review the record, but did so as he must to determine if the ALJ relied upon substantial evidence to arrive at his decision and to respond directly to claimant's citations to the record. (Doc. 16, at 29–32). Judge Roberts was careful to focus on the ALJ's reliance on the "little consistency" Dr. Lisogurski's opinion had with treatment notes by other providers and claimant's daily activities. (*Id.*, at 25, 35–41).

The Court also rejects claimant's argument that Judge Roberts improperly considered the impact Dr. Patel's treatment notes would have had on the ALJ's decision. Claimant speculates that the ALJ did not cite or rely on Dr. Patel's treatment notes

---

[3] Available at: https://hbr.org/2020/12/psychiatry-is-revealing-the-potential-and-pitfalls-of-telehealth

13

because Dr. Patel also treated claimant over a video connection. (Doc. 17, at 4). There is no basis in fact for this speculation. Judge Roberts acknowledged that the ALJ did not cite to Dr. Patel, but also noted that both parties relied on Dr. Patel's treatment notes in their briefs. A thorough R&R then demanded that Judge Roberts respond to the parties arguments and he found that there was nothing in those notes that would have changed the ALJ's assessment because those notes were more favorable to the Commissioner's position. (Doc. 16, at 37, 41 n.11). Judge Roberts also noted, correctly, that the fact that the ALJ did not mention Dr. Patel's treatment notes does not mean that he did not consider them. (*Id.*, at 18 n.3). In short, Judge Roberts did not improperly weigh the evidence or speculate.

Thus, the Court overrules claimant's objections, and adopts, with modification, Judge Roberts' R&R on this issue and finds that the ALJ did not err in the weight he afforded Dr. Lisogurski's opinion.

### B. *Claimant's Back Impairment*

Claimant objects to Judge Roberts' recommendation that the Court affirm the ALJ's findings that claimant's back impairment was not severe. (Doc. 17, at 6–8). In making this objection, however, claimant does not argue that Judge Roberts made an error of fact or law; rather, claimant reiterates the arguments he made in his initial brief. The Court finds that Judge Roberts carefully analyzed the record and properly found that the substantial evidence in the record supported the ALJ's decision on this issue. Judge Roberts noted that no doctor placed lifting limitations on claimant and treated his back pain very conservatively. (Doc. 16, at 45). The Court finds no flaw in Judge Roberts' careful and thorough analysis and agrees that substantial evidence in the record supports the ALJ's finding that claimant's back pain was not a severe impairment.

Thus, the Court overrules claimant's objections and adopts without modification Judge Roberts' R&R on this issue.

14

### C. Dr. Roland's Opinion

Claimant objects to Judge Roberts' recommendation that the Court affirm the weight the ALJ afforded Dr. Roland's opinion. (Doc. 17, at 8–10). Again, however, claimant does not argue that Judge Roberts made an error of fact or law; rather, claimant simply reiterates the arguments he made in his initial brief. Judge Roberts conducted a very thorough analysis of the record regarding Dr. Roland, his opinion, and the weight the ALJ afforded it. (Doc. 16, at 9–22). Judge Roberts directly addressed and rejected claimant's argument that the ALJ improperly weighed the importance of claimant's ability to interact publicly with people and in situations that are different from work relationships. (*Id.*, at 19–20). Judge Roberts found, and the Court agrees, that the ALJ did not rely on these daily activities to prove claimant's ability to perform substantial gainful activity, but to discount the weight afforded to claimant's subjective complaints. (*Id.*, at 21–22). Judge Roberts also directly addressed claimant's assertion that Dr. Roland opined that claimant's seizures are a side effect of his mental impairments. (*Id.*, at 12–15). Judge Roberts found this was unsupported by the record and that Dr. Roland did not tie claimant's seizures to his mental health issues. (*Id.*, at 14). Judge Roberts further noted that Dr. Roland gave "a medical opinion out of his area of expertise based solely on information Claimant reported to him." (*Id.*, at 14–15). The Court agrees. This is not a case where the record is ambiguous and required further development, as claimant argues. (Doc. 17, at 10). The record is clear and simply does not support the conclusion claimant wishes to draw from it.

Thus, the Court overrules claimant's objections and adopts without modification Judge Roberts' R&R on this issue.

### D. *Substantial Evidence Finding*

Claimant's last objection is a general one that Judge Roberts should not have found that substantial evidence on the record as a whole supported the Commissioner's decision.

(Doc. 17, at 10–11). Claimant's objections here fall far short of that which is necessary to merit de novo review by the Court. Claimant does not state how Judge Roberts allegedly erred; he simply disagrees with Judge Roberts' conclusion. These objections fail to comply with Local Rule 72A, which states that "[a] party who objects to . . . a magistrate judge's report and recommendation must file *specific*, written objections to the . . . report and recommendation[.]" LR 72A (emphasis added); *accord* FED. R. CIV. P. 72(b)(2) (requiring that "a party may serve and file *specific* written objections to the proposed findings and recommendations" (emphasis added)). Claimant's objections to Judge Roberts' R&R here are, in short, that claimant does not like the ruling. He articulates no reasons other than those already argued to, and addressed by, Judge Roberts. Claimant's general, nonspecific, objections on this last issue would require the Court to duplicate the work Judge Roberts has already performed, thus defeating the purpose of the R&R.

A court may exercise its discretion to treat such nonspecific objections as making no objection at all. *See, e.g.*, *Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505, 509 (6th Cir. 1991) (finding that a general objection to the entirety of a magistrate judge's R&R "has the same effects as would a failure to object."); *United States v. Scott*, No. CR07–2004–MWB, 2007 WL 1668058, at *4 (N.D. Iowa June 7, 2007) ("Therefore, the court denies defendant Scott's objection on the ground that defendant Scott has failed to state his objection with the requisite particularity."). The Eighth Circuit Court of Appeals has repeatedly noted that district courts need not conduct a de novo review of a magistrate judge's order when the objecting party makes only a general, conclusory objection. *See, e.g.*, *Belk v. Purkett*, 15 F.3d 803, 815 (8th Cir. 1994); *see also Thompson v. Nix*, 897 F.2d 356, 357–58 (8th Cir. 1990) ("We also remind parties

that objections must be . . . specific to trigger de novo review by the District Court of any portion of the magistrate's report and recommendation.").[4]

Here, the Court exercises its discretion to review claimant's last objection for clear error. To do otherwise would defeat the purpose of the R&R. *See Whited v. Colvin*, No. C 13-4039-MWB, 2014 WL 1571321, at *3 (N.D. Iowa Apr. 18, 2014). Having found no clear error, the Court overrules claimant's objection and adopts Judge Roberts' R&R on this last issue without modification.

### VII. CONCLUSION

For these reasons, the Court **overrules** claimant's objections to Judge Roberts' R&R (Doc. 17), **adopts** the R&R with modification (Doc. 16), and **affirms** the Commissioner's decision that claimant is not disabled and thus not entitled to SSI benefits. The Court modifies the R&R only as to Judge Roberts' finding that the ALJ erred in discounting Dr. Lisogurski's opinion because she never treated claimant in person; the Court finds that the ALJ did not err on that issue. Judgment will enter against claimant and in favor of the Commissioner.

**IT IS SO ORDERED** this 25th day of March, 2021.

_____
C.J. Williams
United States District Judge
Northern District of Iowa

---

[4] The Eighth Circuit Court of Appeals has suggested, however, that in cases involving "strikingly brief" records, or those in which a pro se litigant objects, district courts should apply a de novo review standard more liberally, even in the face of general objections. *See Hudson v. Gammon*, 46 F.3d 785, 786 (8th Cir. 1995) (holding a litigant's "pro se objections sufficiently directed the district court to the alleged errors"). Here, claimant is represented by an experienced attorney. Further, the record is quite lengthy here. Thus, the Court will not apply de novo review more liberally.